**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

FERNANDO MENENDEZ-GONZALEZ, AKA Fernando Menedez,

*Petitioner*,

v.

WILLIAM P. BARR, Attorney General,

*Respondent.*

No. 15-73869

Agency No. A072-062-253

OPINION

On Petition for Review of an Order of the
Board of Immigration Appeals

Argued and Submitted January 14, 2019
San Francisco, California

Filed July 11, 2019

Before: J. Clifford Wallace, Richard R. Clifton,
and Michelle T. Friedland, Circuit Judges.

Opinion by Judge Clifton

## SUMMARY[*]

### Immigration

Denying Fernando Menendez-Gonzalez's petition for review of a decision of the Board of Immigration Appeals denying *sua sponte* reopening, the panel explained that it had jurisdiction for the limited purpose of identifying legal or constitutional error, but concluded that Menendez-Gonzalez had established no such error through his claims that (1) the BIA irrationally departed from a settled practice of granting *sua sponte* reopening when the conviction underlying a removal order is vacated, and (2) the BIA violated its regulations when it failed to remand the case to the immigration judge for factfinding.

Based on a conviction for cocaine possession, Menendez-Gonzalez was deported in 1994, but later re-entered the United States illegally. After his conviction was vacated in 2009 because there was no preliminary hearing transcript to assess whether he was properly advised of the consequences of his plea bargain, Menendez-Gonzalez filed a motion to reopen. As relevant here, the BIA concluded that he had not demonstrated that the vacatur of his conviction was an "exceptional circumstance" warranting *sua sponte* reopening.

The panel explained that denials of motions to reopen *sua sponte* generally are not reviewable because the decisions are committed to agency discretion, but that the court recognized one narrow exception in *Bonilla v. Lynch*, 840 F.3d 575 (9th

---

[*] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

Cir. 2016), which held that the court has jurisdiction to review BIA decisions denying *sua sponte* reopening for the limited purpose of reviewing the reasoning behind the decisions for legal or constitutional error.

Menendez-Gonzalez argued that this court had jurisdiction under *Bonilla* and should grant his petition because the BIA irrationally departed from a settled practice of granting *sua sponte* reopening when the conviction underlying a removal order is vacated. The panel rejected that contention, concluding that Menendez-Gonzalez had not demonstrated a pattern that was well established or clearly defined. Noting that Menendez-Gonzalez cited to ten unpublished BIA decisions over a period of about eight years during which the BIA completed more than 30,000 cases each year, the panel explained that citation of a few unpublished decisions fell far short of establishing that the BIA has effectively adopted a rule that vacatur of an underlying conviction necessarily requires it to grant reopening *sua sponte*.

The panel also rejected Menendez-Gonzalez's contention that the BIA violated the regulation that precludes it from engaging in factfinding when deciding appeals. The panel observed that the only "factfinding" Menendez-Gonzalez challenged was whether he remained convicted and whether his positive equities constituted "exceptional circumstances" warranting reopening. However, the panel explained that the legal significance of his conviction and its subsequent vacatur presented a legal question that the BIA permissibly decided, and that determining whether he presented "exceptional circumstances" called for exercise of the agency's discretion, not factfinding.

Accordingly, the panel concluded that Menendez-Gonzalez's petition did not fit within the narrow exception that allows for judicial review where the BIA's decision was based on legal or constitutional error.

---

## COUNSEL

Stacy Tolchin (argued), Law Offices of Stacy Tolchin, Los Angeles, California, for Petitioner.

Andrew B. Insenga (argued), Trial Attorney; Douglas E. Ginsburg, Assistant Director; Office of Immigration Litigation, Civil Division, United States Department of Justice, Washington, D.C.; for Respondent.

---

## OPINION

CLIFTON, Circuit Judge:

This court generally lacks jurisdiction to review a decision by the Board of Immigration Appeals ("BIA") not to exercise its *sua sponte* authority to reopen removal proceedings. *Ekimian v. I.N.S.*, 303 F.3d 1153, 1154 (9th Cir. 2002). In *Bonilla v. Lynch*, however, we concluded that this court has jurisdiction to review denial of a motion to reopen *sua sponte* only "for the limited purpose of reviewing the reasoning behind the decisions for legal or constitutional error." 840 F.3d 575, 588 (9th Cir. 2016).

Fernando Menendez-Gonzalez petitions for review of a BIA decision denying *sua sponte* reopening based on the vacatur of the criminal conviction underlying his removal

order. This case thus presents the question of whether Menendez-Gonzalez has established legal or constitutional error in the BIA's reasoning such that we have jurisdiction to review that decision. *See id.* We conclude that Menendez-Gonzalez has not established such error and therefore deny his petition.

## I.  Background

Fernando Menendez-Gonzalez is a native and citizen of Peru who entered the United States in 1985 without being legally admitted. In 1990, he was convicted in state court of cocaine possession in violation of California Health & Safety Code § 11351. He was subsequently charged as deportable for entering without inspection and for controlled substance and aggravated felony convictions based on his drug offense. An immigration judge ("IJ") found him deportable, and he waived appeal. He was deported in 1994, but he re-entered the United States illegally in the same year.

In 2009, Menendez-Gonzalez's 1990 conviction was vacated because there was no preliminary hearing transcript to assess whether he was properly advised of the consequences of his plea bargain, in violation of California Penal Code § 1016.5. He then submitted to the immigration court a motion to reopen based on the vacatur of his conviction which, he contended, made him eligible for adjustment of status and suspension of deportation.

The IJ denied the motion, concluding that she lacked jurisdiction to reopen under the "departure bar" for removed aliens. At the time, BIA precedent held that 8 C.F.R. § 1002.23(b)(1) precluded a previously-removed alien from invoking the jurisdiction of the immigration court to consider

a motion to reopen, even *sua sponte*. *See generally Matter of Armendarez-Mendez*, 24 I. & N. Dec. 646 (BIA 2008). Menendez-Gonzalez timely appealed to the BIA, which dismissed his appeal. He then filed a petition for review in this court. This court granted the government's unopposed motion to remand to the BIA in light of a subsequent Ninth Circuit decision on the departure bar. In that case, *Reyes-Torres v. Holder*, 645 F.3d 1073, 1075–77 (9th Cir. 2011), we held that an alien who filed a motion to reopen after being deported from the United States was not precluded by the departure bar from pursuing the motion.

On remand, the BIA again denied the motion to reopen, agreeing with the IJ's alternate conclusion that the motion was time-barred. A motion to reopen must be filed within 90 days of a final order of removal, or on or before September 30, 1996, whichever comes later. 8 C.F.R § 1003.23(b)(1). The BIA declined to exercise its authority—discussed at greater length below—to reopen the proceeding *sua sponte*, because Menendez-Gonzalez had not demonstrated that the vacatur of his conviction was an "exceptional circumstance" warranting *sua sponte* reopening.

Menendez-Gonzalez again petitioned for review. This court granted the petition and remanded to the BIA. In doing so, we explicitly noted that we lacked jurisdiction to review the BIA's exercise of its discretionary authority to grant or deny *sua sponte* reopening, describing that discretion as "unfettered." The remand was necessary, however, because we could not determine whether the BIA's decision was based on such an exercise of discretionary authority or, alternatively, on the application of a different standard used to evaluate the merit of a collateral attack on the underlying prior removal order. We thus asked the BIA to clarify the

legal standard under which it denied *sua sponte* reopening. *Menendez-Gonzalez v. Holder*, 597 F. App'x 435 (9th Cir. 2015).

The BIA again denied the motion to reopen, restating its earlier conclusion and specifying that it applied the "exceptional circumstances" standard applicable to *sua sponte* reopening. Menendez-Gonzalez then filed this petition for review.

## II. Discussion

"The Board may at any time reopen or reconsider on its own motion any case in which it has rendered a decision." 8 C.F.R. § 1003.2(a). Similarly, "[a]n Immigration Judge may upon his or her own motion at any time, or upon motion of the Service or the alien, reopen or reconsider any case." 8 C.F.R. § 1003.23(b)(1).

The election to reopen or reconsider on its own motion is commonly called the exercise of *"sua sponte"* authority. *See Ekimian*, 303 F.3d at 1155. In practice, the agency's decision to exercise its *sua sponte* authority is often not actually initiated by the agency on its own but is instead prompted, as here, by a party filing a motion to reopen *sua sponte*. *See Bonilla*, 840 F.3d at 585 ("Since the enactment of IIRIRA, where the timing and numerosity statutory requirements are not met and equitable tolling is unavailable, the only way an alien can reopen an adverse final order of removal is to ask the Board to exercise its *sua sponte* authority . . . ."). Nonetheless, as we noted at the outset of this opinion, denials of motions to reopen *sua sponte* generally are not reviewable because the decisions are committed to agency discretion. *Ekimian*, 303 F.3d at 1159.

We have recognized one narrow exception. We have jurisdiction "to review Board decisions denying *sua sponte* reopening for the limited purpose of reviewing the reasoning behind the decisions for legal or constitutional error." *Bonilla*, 840 F.3d at 588. In recognizing our jurisdiction in *Bonilla*, we expressed concern that the BIA's denial in that case may have been based on a mistaken legal premise, that the petitioner[1] had already lost his permanent resident status and would not regain it to become eligible for certain relief, even if reopening were granted. *Id*. at 589. As a legal proposition, we held that granting the motion to reopen would vacate the final deportation order that caused the petitioner to lose his permanent residence status, such that the reopening would not be futile. *Id*. at 589–90.

We reaffirmed in *Bonilla* that if the BIA had exercised its authority "without relying on a constitutionally or legally erroneous premise, its decision will not be reviewable." *Id.* at 592. Because we were "persuaded that the Board based its decision on the legal error we ha[d] identified," we remanded to permit the BIA to "revisit its *sua sponte* reopening decision on a proper understanding of its authority to grant Bonilla relief if reopening is granted." *Id.* at 591, 592. We held that "[i]f, on remand, the Board again declines to exercise its *sua sponte* authority to reopen, and does so without relying on a constitutionally or legally erroneous premise, its decision will not be reviewable." *Id* at 592.

---

[1] We use the term "petitioner" to refer to the party so described in this court, the person seeking relief from an order of removal. In proceedings before the BIA and the immigration court, that person is denominated the "respondent." The potential for confusion is evident, so we make clear how we are using the term.

Menendez-Gonzalez raises two legal claims in arguing that this court has jurisdiction under *Bonilla* and should grant his petition: (1) that the BIA irrationally departed from its settled practice of granting *sua sponte* reopening when the conviction underlying a removal order is vacated, and (2) that the BIA violated its regulations when it failed to remand the case to the IJ. We are not persuaded by either argument.

## A. Inconsistency with a Settled Course of Adjudication

This court generally lacks jurisdiction to review decisions denying *sua sponte* reopening because of "the absence of a judicially manageable standard for us to evaluate the BIA's *exercise of discretion*." *Singh v. Holder*, 771 F.3d 647, 650 (9th Cir. 2014). Even when we recognized in *Bonilla* our limited jurisdiction to review BIA decisions denying *sua sponte* reopening, we affirmed our prior holding that the "'exceptional situation' benchmark does not provide a sufficiently meaningful standard to permit judicial review." *Bonilla*, 840 F.3d at 586. Menendez-Gonzalez contends that the BIA has a settled practice of finding that the vacatur of a criminal conviction is an exceptional circumstance warranting *sua sponte* reopening, and that it irrationally departed from this settled practice in his case.

Menendez-Gonzalez argues that this court should follow a decision by the Third Circuit and hold that orders denying *sua sponte* reopening are subject to judicial review when the BIA departs from its settled practice. The Third Circuit has recognized such a "settled course" exception allowing it to review orders denying *sua sponte* reopening when petitioners "establish that the BIA has limited its discretion via a policy, rule, settled course of adjudication, or by some other method, such that the BIA's discretion can be meaningfully reviewed

for abuse." *Sang Goo Park v. Attorney Gen.*, 846 F.3d 645, 653 (3d Cir. 2017).

Menendez-Gonzalez cites to another Third Circuit case remanding to the BIA to clarify its basis for denying a motion for *sua sponte* reopening based on a vacated conviction, *Cruz v. Attorney Gen.*, 452 F.3d 240, 250 (3d Cir. 2006). In that case, the BIA concluded that *sua sponte* reopening was not "warranted for any reason" but did not refer to vacatur of the conviction that was the sole basis of inadmissibility, and the Third Circuit remanded for the BIA to clarify whether it arrived at its conclusion based on an exercise of its unfettered discretion, such that its decision would not be subject to review. *Id.* at 242, 250. Menendez-Gonzalez also cites the Supreme Court's statement in *I.N.S. v. Yueh-Shaio Yang*, 519 U.S. 26, 32 (1996), that if the BIA "announces and follows—by rule or by settled course of adjudication—a general policy by which its exercise of discretion will be governed, an irrational departure from that policy" could constitute arbitrary or capricious action subject to reversal.

It may be that the BIA's departure from an established policy, set "by rule or by settled course of adjudication," *id*., could amount to a legal or constitutional error, but the existence of a "settled course" cannot be lightly inferred. The question is whether the agency has acted to constrain its otherwise unfettered discretion.

Even under the Third Circuit's cases, the petitioner must establish that the pattern of dispositions is "clearly defined" so the BIA's discretion can be "meaningfully reviewed." *Park*, 846 F.3d at 653. It is insufficient if the petitioner identifies a "'pattern' of dispositions whose contours are not clearly defined or which is not tailored to the petitioner's

circumstances." *Id*. Menendez-Gonzalez has not demonstrated a pattern that is well established or clearly defined.

Menendez-Gonzalez cites to ten unpublished BIA decisions over a period of about eight years, a period of time when the BIA completed more than 30,000 cases each year. Executive Office for Immigration Review, FY 2013 Statistics Yearbook S1 (2014); Executive Office for Immigration Review, FY 2016 Statistics Yearbook Q2 (2017). He argues that those citations demonstrate a "pattern" of BIA orders granting *sua sponte* reopening following vacatur of a conviction, and that this pattern established a sufficiently "settled course" that constrained the BIA's discretion and obligated it to exercise its *sua sponte* authority to reopen his case.

We do not agree. Among the thousands of decisions made by the BIA over many years, it is not at all remarkable or persuasive to be able to find a few that seem to have elements in common with a current litigant's case. That is especially true with unpublished dispositions, as they generally include only brief descriptions, if any, of facts that may influence the exercise of discretion.[2] Citation of a few unpublished decisions falls far short of establishing that the BIA has effectively adopted a rule that vacatur of an underlying conviction necessarily requires it to grant reopening *sua sponte*, effectively eliminating the discretion that the BIA

---

[2] Among the cases Menendez-Gonzalez cites, many have factual features that potentially distinguish them from his appeal. For example, in all but two of the cases he cites where the BIA decided to reopen *sua sponte*, the Government either did not oppose or did not respond to the noncitizen's motion to reopen.

would otherwise have to examine the specifics of an individual petitioner's case.

Moreover, we note that in declining to exercise its discretion in favor of Menendez-Gonzalez's motion, the BIA stated that vacatur of his 1990 conviction "solely on the basis of proceedings commenced nearly 15 years *after* the execution of his lawful deportation order" did not constitute an "exceptional circumstance" justifying s*ua sponte* reopening. There have been other decisions over the years in which the BIA declined to exercise its *sua sponte* authority to reopen after determining that vacatur of the underlying conviction did not constitute an "exceptional circumstance" sufficient to warrant such an extraordinary remedy. *See In Re Tunbosun Olawale William*, 2008 WL 5537807, at \*3–4 (BIA Dec. 23, 2008) (unpublished); *In Re: Hugo Vara-Martinez*, 2012 WL 3276566 (BIA July 13, 2012) (unpublished). Even if we concluded that there was a sufficiently established pattern of granting *sua sponte* reopening where the underlying conviction had been vacated—and we have not—Menendez-Gonzalez has not established any "incorrect legal premise" in the BIA's decision not to reopen *sua sponte* where the petitioner waited years before moving to reopen. *See Bonilla*, 840 F.3d at 588.

The citation by Menendez-Gonzalez to a relative handful of unpublished BIA decisions arriving at different conclusions does not establish a "settled pattern of adjudication" or provide us with any meaningful standard to apply to limit the agency's exercise of discretion. We only have jurisdiction "for the limited purpose of identifying legal or constitutional error," *id.* at 586, and no such error is apparent in the record before us.

*B. BIA Regulations*

Under 8 C.F.R. § 1003.1(d)(3)(iv), "the Board will not engage in factfinding in the course of deciding appeals." Menendez-Gonzalez argues the BIA violated this provision by making factual findings instead of remanding his case to the IJ for factfinding. "Where the IJ has not made a finding of fact on a disputed matter, and such a finding is necessary to resolution of the case, the BIA must remand to the IJ to make the required finding; it may not conduct its own fact-finding." *Rodriguez v. Holder*, 683 F.3d 1164, 1170 (9th Cir. 2012).

Although Menendez-Gonzalez argues that the BIA violated this rule, he has not identified the finding of any disputed facts that mattered for the BIA's decision. The only "factfinding" he challenges is whether he remained convicted and whether his positive equities constituted "exceptional circumstances" warranting reopening. It is not disputed that Menendez-Gonzalez was convicted in 1990 and the conviction was set aside under state law in 2009 because he might not have been properly advised of the consequences of his plea bargain. The legal significance of those events presented a legal question that the BIA permissibly decided. Determining whether he presented "exceptional circumstances" called for exercise of the agency's discretion, not factfinding.

The relevant regulations also provide that "[a] party asserting that the Board cannot properly resolve an appeal without further factfinding must file a motion for remand." 8 C.F.R. § 1003.1(d)(3)(iv). Menendez-Gonzalez did not file such a motion and did not ask the BIA to remand. Instead he simply argued that *sua sponte* reopening was warranted and that "[t]he Board should therefore order that Respondent's

case be reopened so that he may proceed with his applications." He apparently did not see the need for additional factfinding then. We do not see it now. *See Perez-Palafox v. Holder*, 744 F.3d 1138, 1145 (9th Cir. 2014) ("Although Perez-Palafox accuses the BIA of engaging in improper factfinding, he does not point to any fact found by the IJ that was ignored by the BIA, or any fact found by the BIA that was not found by the IJ.").

Nor was it necessary for the BIA to remand the matter to the IJ in order to let the IJ offer her view on the exercise of discretion. Under 8 C.F.R. § 1003.1(d)(3)(ii), "[t]he Board may review questions of law, discretion, and judgment and all other issues in appeals from decisions of immigration judges *de novo*." Menendez-Gonzalez argues the BIA erred in making a discretionary decision in the first instance because the regulations only permit de novo "review" of the IJ's exercise of discretion. The word "review" does not prohibit the BIA from exercising its own discretion in the first instance. *See, e.g.*, *Wood v. Mukasey*, 516 F.3d 564, 569 (7th Cir. 2008) ("Provided the BIA can do so without additional fact-finding, 8 C.F.R. § 1003.1(d)(3)(iv), we see no reason why it must avoid issues of discretion in an appeal because they were never reached by the IJ."). The BIA did not violate section 1003.1(d)(3)(ii) by declining to exercise its discretionary *sua sponte* authority without remanding to the IJ.

## III.    Conclusion

The petition for review is denied. We generally lack jurisdiction to review a decision by the BIA not to exercise its *sua sponte* authority to reopen proceedings. This petition does

not fit within the narrow exception where the BIA's decision was based on legal or constitutional error.

**PETITION FOR REVIEW DENIED.**